IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHARON JOHNSON, | ) |
| | ) |
|           Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-361-CJP[1] |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
|           Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Sharon Johnson, represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Johnson applied for benefits in December, 2010, alleging disability beginning on March 1, 1999. (Tr. 17). After holding an evidentiary hearing, ALJ James E. Craig denied the application for benefits in a decision dated November 6, 2012. (Tr. 29-38). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).   See, Doc. 15.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to include all of plaintiff's mental limitations in the hypothetical question posed to the vocational expert and failed to reconcile inconsistencies between the VE's testimony and the *Dictionary of Occupational Titles.*

2. The ALJ did not consider all of plaintiff's impairments in assessing plaintiff's RFC.

3. The ALJ erred in weighing the medical opinions.

4. The assessment of plaintiff's credibility was erroneous.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C.

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

§423(d)(3).  "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Johnson was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Craig followed the five-step analytical framework described above.  He determined that Ms. Johnson had not been engaged in substantial gainful activity since the date of her application.  He found that plaintiff had severe impairments of heel spurs, diabetes, sarcoidosis, COPD, schizophrenia, bipolar disorder, borderline intellectual functioning and obesity.  He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Johnson had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with a number of physical and mental limitations.  Although a vocational expert testified at the evidentiary hearing, the ALJ used the Medical-Vocational Guidelines ("Grids") (20 C.F.R. Pt. 404, Subpt. P, App. 2) to determine that plaintiff was not disabled.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time

period.

   1.   **Agency Forms**

Ms. Rose was born in 1967 and was almost 32 years old on the alleged onset date.  She was 43 years old when she filed her application.  (Tr. 132).  Plaintiff had last worked at a regular job as a CNA from 1997 through 1999.  (Tr. 143).  She also worked in various capacities while in federal prison from 2000 to 2010.  (Tr. 164).

In her initial Disability Report, plaintiff said her ability to work was limited by a number of mental and physical conditions, including depression, bipolar disorder and anxiety.  She was 5'3" and weighed 230 pounds.  (Tr. 136).  In a later report, she alleged severe pain in her shoulders and pain radiating from her low back into both her legs.  (Tr. 181).

   3.   **Evidentiary Hearing**

Ms. Johnson was represented by a non-attorney representative at the evidentiary hearing on September 19, 2012.  (Tr. 32, 114).

Ms. Johnson testified that she lived with her sister.  She had a medical card.  She was on supervised release.  She had been released from prison on November 23, 2010.  She was in a halfway house until May 22, 2011.  (Tr. 47-49).  She was receiving mental health treatment from Community Resource Center, consisting of counseling and medication.  (Tr. 49-50).

Plaintiff testified that she had a number of medical problems, including heel spurs, lung disease, COPD, asthma, and arthritis in her ankles, knees and shoulders.  She used inhalers and took breathing treatments.  She had diabetes

and diabetic neuropathy. She used a cane. She took Hydrocodone for pain. (Tr. 50-54). She also had bipolar disorder and schizophrenia. She heard voices. She could not concentrate because of racing thoughts. She had panic attacks. (Tr. 57-59).

A vocational expert also testified. Because the ALJ did not rely on his testimony to determine whether plaintiff was disabled, the Court will not summarize his testimony. (Tr. 64-67).

### 3. Medical Records

The transcript contains some of plaintiff's medical records from the Bureau of Prisons. Plaintiff was given a series of injections for heel pain. (Tr. 332-333). She was treated for migraine headaches, high blood pressure, seizure disorder, asthma and diabetes. (Tr. 339-346, 350, 346). She was also treated for ongoing mental health issues. She carried a diagnosis of bipolar disorder. (Tr. 351). In November, 2009, it was noted that she had auditory hallucinations, along with occasional forgetfulness and "loss of focus." (Tr. 357). Auditory and visual hallucinations were noted in February, 2010. (Tr. 391). On April 12, 2010, a physician's assistant observed that she was "restless, anxious, rocking back and forth." (Tr. 342). In September, 2010, she was having anxiety, mood changes and panic attacks. Her dosage of Doxepin was increased. (Tr. 352).

Plaintiff was transferred to a Community Correctional Center (halfway house) on November 24, 2010, and was required by the BOP to participate in mental health treatment until her release date of May 22, 2011. (Tr. 368).

Ms. Johnson was assessed at Community Elements, Inc., on referral from

the BOP in February, 2011. She was described as alert and oriented, well-groomed and pleasant. Her affect was blunted and she was slow to respond to questions. Her speech was often circumstantial. She gave a history of having first been evaluated for depression and suicidal ideation in 1989. She drank heavily and used crack cocaine before she went to prison, and she was treated for substance abuse while in prison. She had been incarcerated for 11 years for cocaine distribution. She complained of hearing voices, racing thoughts, difficulty sleeping, poor memory, poor concentration and difficulty being in crowds. The diagnosis was schizoaffective disorder, bipolar type. Counseling and medication management were recommended. It was noted that she had applied for disability, but she said that she had "worked all my life" and she was currently looking for a job. (Tr. 306-311).

The psychiatrist at Community Elements prescribed Abilify and Tegretol. In April, 2011, the doctor noted that she was stable with no delusions or hallucinations. Plaintiff told the doctor that she had no money for medicine, and the doctor told her that "there is nothing I can do about that." (Tr. 326).

Plaintiff was discharged from Community Elements on May 24, 2011. She was moving to Centralia, Illinois. The recommendation was that she continue with therapy and medication monitoring, and that she continue to attend AA/NA meetings. (Tr. 313).

Dr. Judy Keeven, a psychiatrist at Community Resource Center, saw plaintiff for the first time on July 13, 2011. Dr. Keeven noted that plaintiff had a history of psychiatric symptoms since childhood. She had been tried on a number of

psychotropic medications in prison. She was last placed on Doxepin and Mirtazapine (Remeron), which helped her. However, the prison doctor changed her to Abilify, and the doctor that she saw while in the halfway house continued her on that drug. Abilify relieved her auditory and visual hallucinations, but it also made her extremely nervous, agitated and unable to sleep, so she stopped taking it. She noted that she continued to have hallucinations while on Doxepin and Mirtazapine. Dr. Keeven diagnosed bipolar disorder, type 2, with psychotic features. Plaintiff was already taking Tegretol for her seizure disorder and was tolerating it well, so Dr. Keeven recommended that she increase the dosage of Tegretol for mood stabilization.   (Tr. 475-479).

In January, 2012, Dr. Keeven noted that plaintiff had complete relief of her bipolar symptoms on the increased dose of Tegretol.   (Tr. 482-483).   However, at the next visit in July, 2012, plaintiff reported that she was anxious and depressed, and had mood swings. She heard people talking in her mind. Dr. Keeven discussed the need for an effective mood stabilizer, but plaintiff did not want to take medication. She ultimately agreed to a trial of Latuda. (Tr. 484-485). There are no further notes from Dr. Keeven.

4. **Consultative Psychological Exam**

At the request of the agency, William Kohen, Psy.D., examined plaintiff on March 16, 2011. Dr. Kohen is a licensed clinical psychologist. On exam, Ms. Johnson was alert, oriented, pleasant and cooperative. She was able to follow the conversation and communicated well. No acute psychotic symptoms were observed. At one point, she became afraid of a stuffed rabbit on a shelf. Dr.

Kohen estimated that her level of intellectual functioning was in the borderline range with possible learning disabilities. He concluded that she had "adequate memory to the extent of her limited intellectual abilities." He further concluded that she "may struggle to sustain concentration at times" and her "persistence and adaptability are noticeably impaired by her psychiatric problems, cognitive deficits, and physical problems." He suggested that she may need a representative payee to manage her funds. He diagnosed schizophrenia undifferentiated type, bipolar disorder, and panic disorder without agoraphobia. He also diagnosed possible generalized anxiety disorder, possible borderline intellectual functioning, and possible learning disorder not otherwise specified. (Tr. 228-233).

### 5. State Agency Consultant's RFC Assessment

On April 12, 2011, Michael E. Cremerius, Ph.D., assessed plaintiff's mental RFC. He used an agency form (Form SSA-4734-F4-SUP) that is commonly used for this purpose in social security cases. (Tr. 262-264). This form is referred to as the Mental Residual Functional Capacity Assessment, or MRFCA. Section I of the form consists of a list of mental activities. The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to each activity. Dr. Cremerius checked the box for "moderately limited" for a number of activities, including the following:

- Ability to understand and remember detailed instructions;
- Ability to carry out detailed instructions;
- Ability to maintain attention and concentration for extended periods;
- Ability to perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances;

- Ability to work in coordination with or proximity to others without being distracted by them;

- Ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- Ability to accept instructions and respond appropriately to criticism from supervisors;

- Ability to get along with coworkers without distracting them or exhibiting behavioral extremes.

In Section III of the form, the consultant is asked to explain his summary conclusions in narrative form. Dr. Cremerius wrote, "Overall, the claimant should be capable of performing simple one two-step work-like procedures with adequate concentration persistence and pace in a setting that would be limited to only brief superficial contact with others." (Tr. 264).

**6.   Medical Records Not Before the ALJ**

Plaintiff submitted additional records to the Appeals Council, which considered them in connection with her request for review. See, AC Exhibits List, Tr. 5. Thus, the medical records at Tr. 619-653, designated by the Appeals Council as Exhibit 27F, were not before the ALJ.

The medical records at Tr. 619-653 cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994). See also,

*Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

## Analysis

The briefs of both plaintiff and defendant discuss at some length the hypothetical question posed to the VE and possible conflicts between the VE's testimony and the *DOT*. Neither party seems to have noticed that the ALJ did not, in the end, base his decision on the VE's testimony. He did not mention the fact that a VE had testified. Rather, the ALJ decided the case by applying the Medical-Vocational Guidelines ("Grids") (20 C.F.R. Pt. 404, Subpt. P, App. 2). ALJ Craig concluded, "Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.24." (Tr. 38).

The ALJ was obviously incorrect in using the Grids to decide the case. Contrary to the above-quoted sentence, he did not find that Ms. Johnson had the RFC for a full range of sedentary work. On the contrary, he found that her RFC was for sedentary work with significant nonexertional limitations.[3] It is well settled that the Grids cannot be used to decide whether a claimant is disabled where the claimant has nonexertional limitations. *Murphy v. Colvin*, 759 F.3d 811, 819-820 (7th Cir. 2014), citing *Haynes v. Barnhart,* 416 F.3d 621, 628-629 (7th Cir. 2005). See also, 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(e); SSR 83-10, 1983 WL 3125.

The use of the Grids was an obvious error. In effect, the parties' briefs

---

[3] Exertional limitations affect a person's ability to meet the strength demands of a job, and include limitations on standing and sitting. Nonexertional limitations include postural limitations, such as ability to stoop and kneel, as well as mental limitations. *Murphy v. Colvin*, 759 F.3d 811, 819-820 (7th Cir. 2014).

address whether the error was harmless. Unfortunately, neither party adequately addressed the relevant authority with respect to plaintiff's point about the hypothetical question. In the Court's view, applicable Seventh Circuit precedent mandates the conclusion that the hypothetical question was erroneous.

Dr. Kohen conducted a psychological exam at the request of the agency. The ALJ noted that Dr. Kohen "rendered the opinion that the claimant may struggle to sustain concentration based on her mental impairments and because her overall level of comprehension is noticeably below average." He gave Dr. Kohen's opinion "great weight," noting that the doctor was an unbiased, neutral party, and a specialist who had personally examined Ms. Johnson. (Tr. 36).

Acting as a state agency consultant, Dr. Cremerius assessed plaintiff's mental RFC based upon a review of the records. The ALJ also gave great weight to his opinion that plaintiff "should have the capacity to understand, remember, and carry out at least simple one-two step tasks with adequate concentration, persistence, and pace in a setting that would be limited to only brief, superficial contact with others." (Tr. 37). The ALJ did not mention that Dr. Cremerius also indicated in Section I of the form that plaintiff was moderately limited in a number of areas, including ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical

issues in disability claims under the Act." SSR 96-6p, at *2. The ALJ is required by 20 C.F.R. §§ 404.1527(f) and 416.927(f) to consider the state agency consultant's findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision. See, *McKinzey v. Astrue*, 641 F.3d 884, 891(7th Cir. 2011). ALJ Craig stated that Dr. Cremerius' opinion was entitled to "great weight" because it was supported by the psychiatric treatment records. (Tr. 37). The ALJ did not state that he rejected any part of Dr. Cremerius' opinion.

Plaintiff argues that the hypothetical posed to the VE is deficient because it did not account for all of the moderate limitations found by Dr. Cremerius. Most notably, the hypothetical question did not address plaintiff's moderate limitations in ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff also relies on Dr. Kohen's opinion that she would likely struggle to maintain concentration.

Plaintiff cites *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), a case which is directly applicable. Having accepted the opinions of Drs. Kohen and Cremerius, the ALJ was required under *O'Connor-Spinner* to include plaintiff's limitations in ability to maintain concentration in the hypothetical question posed to the VE.

The ALJ asked a series of hypothetical questions. The question that most closely corresponded to ultimate RFC findings included mental limitations of "work that is three steps or less; only occasional intermittent contact with the public, but not to complete the work process; should be theme-oriented work, not data processing or data work and not dealing with people to complete the work process; no fast pace and no strict quotas." (Tr. 65).

In *O'Connor-Spinner*, the Seventh Circuit held that, "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. The reason for this holding is that there is a distinction between "the ability to stick with a given task over a sustained period" and "the ability to learn how to do tasks of a given complexity." *Ibid.* ALJ Craig's question addressed the complexity of the task by limiting it to three steps or less, but did not address plaintiff's limitations in maintaining concentration.

The Commissioner argues that the ALJ was not required to treat Dr. Cremerius' checkmarks in Section I of the MRFC form as an opinion. In support, she cites *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010). *Smith* is from the Third Circuit, not the Seventh Circuit. She also cites three cases from District Courts in Wisconsin. However, district court decisions "are not authoritative even within the rendering district." *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012).

The Commissioner does cite one Seventh Circuit case, *Johansen v.*

*Barnhart*, 314 F.3d 283 (7th Cir. 2002).   That case is not applicable here.   In *O'Conner-Spinner*, the Court explained that, in *Johansen*, "[W]e let stand a hypothetical formulated in terms of 'repetitive, low-stress' work, a description that excluded positions likely to trigger symptoms of the panic disorder that lay at the root of the claimant's moderate limitations on concentration, persistence and pace." *O'Conner-Spinner,* 627 F.3d at 619.

Neither party cited *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), which rejected the Commissioner's position that the ALJ may ignore Part I of the MRFCA form and consider only the narrative statement in Part III.  *Yurt*, 758 F.3d at 858-859.   The Commissioner's argument is directly contrary to *Yurt. Yurt* was decided on July 10, 2014, before the briefs were filed in this case.

Further, the Commissioner's argument ignores Dr. Kohen's opinion about plaintiff's ability to maintain concentration, an opinion that was given great weight by the ALJ.

In this Circuit, binding precedent holds that there is a distinction between ability to perform simple tasks and ability to maintain concentration, persistence and pace.   "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."   *Yurt v. Colvin*, 758 F.3d at 859.   See also, *O'Connor-Spinner*, 627 F.3d at 620.

Under the binding precedents of *Yurt* and *O'Connor-Spinner*, this Court must conclude that the ALJ failed to build "an 'accurate and logical bridge' between

the evidence of mental impairments and the hypothetical and the mental RFC." *Yurt,* 758 F.3d at 858-859.   Therefore, the ALJ's error in using the Grids was not harmless because the Court cannot predict what the result would be on remand if the ALJ were to pose a proper hypothetical question to the VE.   See, *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Johnson is disabled or that she should be awarded benefits.   On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 23) is **GRANTED**.   The Commissioner's final decision denying Sharon Johnson's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   April 24, 2015.**

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**